# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

NATALIE KOUSOULAS,

    **Plaintiff,**

 v.               **CASE NO:**

TARPON SPRINGS HOSPITAL FOUNDATION INC.

d/b/a ADVENTHEALTH NORTH PINELLAS,

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NATALIE KOUSOULAS, (hereinafter "Plaintiff" or "Ms. Kousoulas"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, TARPON SPRINGS HOSPITAL FOUNDATION INC. d/b/a ADVENTHEALTH NORTH PINELLAS (hereinafter "Defendant," "AdventHealth," or "AHNP") and alleges:

## INTRODUCTION

1.  The Plaintiff brings this action against Defendant, her employer, seeking to recover damages for unlawful discrimination based on pregnancy, failure to provide reasonable accommodations for known pregnancy-related limitations, and retaliation in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), including the Pregnancy Discrimination Act of 1978 ("PDA"); the Pregnant Workers Fairness Act ("PWFA"); and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her pregnancy, failed to provide reasonable accommodations for her known pregnancy-related limitations, and retaliated against her for filing complaints about discriminatory treatment, all in violation of her rights under Title VII, the PDA, the PWFA, and the FCRA. Specifically, Defendant issued pretextual disciplinary action against Plaintiff on the same day her supervisor acknowledged her pregnancy, eliminated the weekend-only shift she had been hired to perform just over one month after she disclosed her pregnancy, denied her request for a reasonable accommodation of her pregnancy-related medical restrictions, placed her on forced medical leave beginning May 30, 2025, and left her without health insurance coverage during a high-risk pregnancy scheduled for a medically necessary C-section on October 14, 2025.

3.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to, loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to

Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pinellas County, Florida.

## PARTIES

8.    Plaintiff is NATALIE KOUSOULAS, a 39-year-old female who resides at 13807 Leroux Dr, Hudson, FL 34669.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on her pregnancy under Title VII, the PDA, the PWFA, and the FCRA.

10.   At all times material herein, Plaintiff was employed by Defendant as an RN OR Specialist (Circulator) in the Surgical Services Department, working a weekend-only schedule of Friday, Saturday, and Sunday from 6:30 AM to 7:00 PM.

11.   At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.   At all times material herein, Plaintiff was an employee entitled

to protection as defined by Title VII, the PDA, the PWFA, and the FCRA.

13. The Defendant, TARPON SPRINGS HOSPITAL FOUNDATION INC. d/b/a ADVENTHEALTH NORTH PINELLAS, is a not-for-profit acute-care hospital facility with a principal place of business located at 1395 S Pinellas Ave, Tarpon Springs, FL 34689.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Pinellas County, Florida, employing approximately 780 employees and is part of AdventHealth, a faith-based healthcare company.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the PDA, the PWFA, and the FCRA.

16. Accordingly, Defendant is liable under Title VII, the PDA, the PWFA, and the FCRA for the unlawful discrimination, failure to accommodate, and retaliation to which it subjected Plaintiff as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites

prior to filing the instant lawsuit.

18.    On July 31, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, pregnancy discrimination and retaliation (EEOC Charge No. 511-2025-04305).

19.    On March 27, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2025-04305) against Defendant.

20.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.    This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

22.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23. On April 11, 2022, Defendant hired Plaintiff as an RN OR Specialist (Circulator) in the Surgical Services Department at AdventHealth North Pinellas. Plaintiff worked a weekend-only shift schedule, Friday, Saturday, and Sunday from 6:30 AM to 7:00 PM, consisting of thirty-six (36) hours per week, earning $48.80 per hour on Fridays and $48.80 per hour plus a $4.50 per hour shift differential on weekends.

24. Plaintiff is a Psychiatric Mental Health Nurse Practitioner – Board Certified (PMHNP-BC), RN MSN, with extensive nursing experience. Plaintiff reported to Department Director Mei Ching "Agnes" Yau (MBA, BSN, RN, CNOR) and worked under various managers, including Maria Spier and, later, interim manager Lori Hicks.

25. Throughout her employment, Plaintiff performed the essential functions of her job at a satisfactory or above-satisfactory level.

26. During her previous pregnancy from October 2023 through July 2024, Plaintiff worked the same weekend shift schedule without any issues, restrictions, or need for accommodations. She returned from maternity leave in October 2024 and resumed her regular weekend duties without incident.

27. On March 1, 2025, Plaintiff disclosed her current pregnancy to

Director Agnes Yau by email, informing her that she was pregnant, that her due date was October 14, 2025, and that she would require a medically scheduled C-section. This is a high-risk pregnancy requiring treatment by a maternal fetal medicine doctor, level 2 ultrasounds, and increased doctor visits, as Plaintiff is classified as an "AMA pregnancy" (Advanced Maternal Age).

28. On March 7, 2025, the same day that Director Yau responded to Plaintiff's pregnancy email to acknowledge the news, Defendant issued Plaintiff a Written Corrective Action. The corrective action was purportedly based on an incident from February 21, 2025, more than two weeks prior, in which Plaintiff allegedly delayed clocking out early when instructed.

29. On February 21, 2025, Plaintiff and her coworker Deanna Muhar-Rivera each received a text message from Team Leader/Charge Nurse Amy Abdulla stating they "could go home." Plaintiff sought clarification as to whether leaving was mandatory or voluntary but received no response. Both Plaintiff and Ms. Muhar-Rivera remained on shift until instructed by the interim manager to leave. However, only Plaintiff was issued a Written Corrective Action for this conduct. Ms. Muhar-Rivera was not disciplined for the same conduct, despite being identically situated.

30. Punch-out records reflect that other employees, including Jim Ancona and Ron Ziegler, clocked out around the same time as Plaintiff on February 21, 2025 without receiving any corrective action for the same conduct. Of all the employees present that day, Plaintiff was the only one disciplined for the alleged failure to promptly leave early, and she was the only one who had disclosed a pregnancy to her supervisor.

31. On April 4, 2025, just over one month after Plaintiff disclosed her pregnancy to Director Yau, all weekend shift staff were informed in a group meeting and a follow-up email that the weekend-only shift would be eliminated effective May 4, 2025. Defendant stated the elimination was justified by an average of only 1.88 cases per day on weekends. Plaintiff disputes this figure, asserting that actual case numbers were 5–7 cases per day and that the 2024 data cited was skewed by two significant hurricanes that shut down the OR and caused the hospital to be evacuated.

32. Three employees were affected by the weekend shift elimination, including Plaintiff. Those employees were each told they would be transitioned to a Monday through Friday schedule. No weekend-only scheduled position was offered that aligned with the restrictions Plaintiff's provider would subsequently identify as medically necessary.

33. Defendant offered Plaintiff an alternate PRN Nursing Supervisor Night position, but Plaintiff was unable to accept this position because it was a PRN position without benefits and at a lower effective rate of pay than her current position, and it did not accommodate her pregnancy-related medical needs.

34. On April 29, 2025, HR representative Candice Tamas called Plaintiff and specifically told her to apply for an ADA accommodation in order to preserve her shift. This conversation was witnessed by Scott Bashore, a current AdventHealth employee and surgical technologist. Consistent with this guidance, Plaintiff's weekend shift was extended for additional pay periods while the accommodation process was pending, demonstrating that AdventHealth had the ability to maintain weekend shifts when it chose to do so.

35. On May 13, 2025, Plaintiff submitted her ADA accommodation request (Case Number: 2100842) with medical restrictions through October 20, 2025. Plaintiff's medical provider listed the following restrictions: no exposure to polymers used for joint surgery, no lifting over twenty-five (25) pounds, no call shifts, no holidays or weekdays, and work only Friday, Saturday, and Sunday from 6:30 AM to 7:00 PM. These restrictions were

designed to allow Plaintiff to safely continue performing her job duties through the end of her pregnancy.

36.    AdventHealth offered only a partial accommodation: no call shifts, no lifting over twenty-five (25) pounds, and no polymer cases. This partial accommodation did not address Plaintiff's medically necessary restriction against working holidays and weekdays. Director Agnes Yau denied the full accommodation request on the basis that accommodating the weekend-only schedule would cause an undue hardship.

37.    Because the partial accommodation failed to address her critical restriction against weekday and holiday work, Plaintiff declined the partial accommodation. As a result, Defendant placed Plaintiff on a forced medical leave of absence beginning on or about May 30, 2025.

38.    Plaintiff's health insurance coverage was scheduled to end on October 1, 2025, merely thirteen (13) days before her scheduled C-section on October 14, 2025. Plaintiff's short-term disability benefits application was formally denied.

39.    Ironically, within approximately one month of placing Plaintiff on forced medical leave, interim manager Lori Hicks informed staff that surgeon Robert Santa-Cruz wanted to book weekend surgeries and would

need to hire a weekend surgical team. This statement directly contradicts Defendant's stated rationale for eliminating the weekend shift due to insufficient case volume.

40.    Plaintiff filed an internal ethics complaint regarding the discriminatory treatment she experienced. Her final email to the ethics team was never replied to, and the complaint was never properly investigated.

41.    Plaintiff observed a broader pattern of retaliation against employees who filed ethics complaints or challenged discriminatory practices: Jim Ancona was terminated after filing an ethics complaint, Roger Barnard was repeatedly written up following his ethics complaint, and Laura Natto was subjected to write-ups after her complaint.

42.    The adverse and retaliatory treatment Plaintiff received during her most recent pregnancy stands in stark contrast to the support and uneventful experience she had during her previous pregnancy in the same role, in which she worked the identical schedule without any issues, restrictions, accommodations, or disciplinary action.

43.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff was forced to seek alternative employment and is currently working as an APRN at a lower hourly rate than she earned

in her position with Defendant. Plaintiff also incurs significant additional monthly childcare costs as a result of being forced from her weekend-only schedule.

44.    Plaintiff has been caused to suffer emotional distress, mental anguish, humiliation, and damage to her professional reputation as a result of Defendant's unlawful conduct, and has been required to seek ongoing therapy related to the distress caused by being placed on forced medical leave during her high-risk pregnancy.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**Pregnancy Discrimination**
**42 U.S.C. § 2000e et seq.**

45.    Plaintiff re-alleges paragraphs 1 through 44 as though fully set forth herein.

46.    At all times material, Defendant was an employer within the meaning of Title VII.

47.    Plaintiff is a pregnant female and, therefore, a member of a protected class under Title VII, as amended by the Pregnancy Discrimination Act of 1978.

48.    Plaintiff was qualified for her position and performed her job

satisfactorily, including having successfully worked the same weekend shift schedule throughout her prior pregnancy from October 2023 through July 2024 without any issues, restrictions, or disciplinary action.

49. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of her employment because of her pregnancy. Among other things, Defendant issued Plaintiff a Written Corrective Action on March 7, 2025, the same day her supervisor acknowledged receipt of her pregnancy disclosure, for conduct that was not similarly disciplined when engaged in by a non-pregnant coworker. Defendant also eliminated Plaintiff's weekend shift just over one month after her pregnancy disclosure, denied her request for a reasonable accommodation of her pregnancy-related medical restrictions, and placed her on a forced medical leave of absence beginning May 30, 2025, leaving her without health insurance coverage thirteen (13) days before her scheduled C-section.

50. Defendant treated Plaintiff less favorably than similarly situated employees who were not pregnant. Plaintiff's coworker Deanna Muhar-Rivera engaged in the same conduct underlying the February 21, 2025 corrective action and was not disciplined. Male coworkers David Scott and Michael Piemonte routinely left early without being required to text a

manager and without being subjected to discipline.

51. Defendant's stated reasons for its adverse actions were pretextual. The weekend shift elimination was announced just over one month after Plaintiff's pregnancy disclosure, and Defendant's claimed business justification was directly contradicted when, within approximately one month of forcing Plaintiff on leave, a supervisor informed staff that a surgeon was seeking to book weekend surgeries and would need to hire a weekend team.

52. As a direct and proximate result of Defendant's pregnancy discrimination, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, loss of health insurance, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under Title VII, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

## COUNT II
### Violation of the Pregnant Workers Fairness Act
### Failure to Provide Reasonable Accommodation

53.   Plaintiff re-alleges paragraphs 1 through 44 as though fully set forth herein.

54.   At all times material, Defendant was an employer within the meaning of the PWFA, employing fifteen (15) or more employees.

55.   Plaintiff is a qualified employee under the PWFA with known limitations related to, affected by, or arising out of her pregnancy, as communicated to Defendant through her accommodation request.

56.   On May 13, 2025, Plaintiff submitted an accommodation request (Case Number: 2100842) identifying the following pregnancy-related restrictions through October 20, 2025: no exposure to polymers used for joint surgery, no lifting over twenty-five (25) pounds, no call shifts, no holidays or weekdays, and work only Friday, Saturday, and Sunday from 6:30 AM to 7:00 PM.

57.   Defendant failed to provide Plaintiff with a reasonable accommodation for her known pregnancy-related limitations. Although Defendant offered a partial accommodation addressing some of her restrictions, it refused to accommodate her medically necessary restriction

against weekday and holiday work, which was the critical restriction tied to her high-risk pregnancy care needs.

58.    Defendant required Plaintiff to accept a partial accommodation that did not reasonably address her known limitations, rather than engaging in good faith to identify an accommodation that would allow her to continue working through her pregnancy.

59.    Defendant then placed Plaintiff on forced medical leave beginning May 30, 2025, rather than providing an alternative reasonable accommodation, in violation of the PWFA's prohibition against requiring an employee to take leave when other reasonable accommodations can be provided.

60.    As evidenced by Defendant's own conduct in extending Plaintiff's weekend shift during the accommodation process, Defendant had the ability to maintain Plaintiff's weekend schedule. Defendant's own statements after placing Plaintiff on leave, indicating a need to hire weekend surgical staff, further demonstrate that the weekend-only schedule could have been maintained without undue hardship.

61.    As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered damages, including lost wages, lost

benefits, loss of health insurance, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under the PWFA, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

**COUNT III**
**Violation of Title VII of the Civil Rights Act of 1964**
**Retaliation**
**42 U.S.C. § 2000e et seq.**

62.   Plaintiff re-alleges paragraphs 1 through 44 as though fully set forth herein.

63.   At all times material, Defendant was an employer within the meaning of Title VII.

64.   Plaintiff engaged in protected activity under Title VII by filing an internal ethics complaint regarding the discriminatory treatment she experienced, and by submitting requests and communications opposing discriminatory employment practices.

65.   Defendant knew about Plaintiff's protected activity.

66. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including the forced medical leave beginning May 30, 2025, the denial of her accommodation request, and conduct that left her without health insurance coverage during her high-risk pregnancy.

67. Defendant failed to properly investigate Plaintiff's internal ethics complaint. Plaintiff's final email to the ethics team was never replied to, and no meaningful remedial action was taken. Defendant exhibited a broader pattern of retaliating against employees who filed ethics complaints: Jim Ancona was terminated after filing an ethics complaint, Roger Barnard was repeatedly written up following his complaint, and Laura Natto was subjected to write-ups after her complaint.

68. The timing of the adverse actions, together with the surrounding circumstances and the pretextual nature of Defendant's stated justifications, supports a causal connection between Plaintiff's protected activity and Defendant's retaliatory conduct.

69. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other

compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests all relief available under Title VII, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

<u>**COUNT IV**</u>
**Violation of the Florida Civil Rights Act**
**Pregnancy Discrimination**
**§ 760.10 et seq., Florida Statutes**

70.    Plaintiff re-alleges paragraphs 1 through 44 as though fully set forth herein.

71.    Plaintiff is a pregnant female and, therefore, a member of a protected class under the FCRA.

72.    At all times material, Defendant was an employer within the meaning of the FCRA.

73.    At all times material, Plaintiff was qualified for her position and performed the essential functions of her job.

74.    Defendant discriminated against Plaintiff because of her pregnancy by, among other things, issuing her a pretextual Written

Corrective Action on the same day her supervisor acknowledged her pregnancy, eliminating her weekend shift within weeks of her pregnancy disclosure, denying her a reasonable accommodation for her pregnancy-related medical restrictions, and placing her on a forced medical leave of absence that stripped her of health insurance coverage during her high-risk pregnancy.

75. Defendant treated Plaintiff less favorably than similarly situated employees who were not pregnant, including coworker Deanna Muhar-Rivera, who was not disciplined for engaging in the same underlying conduct that resulted in Plaintiff's corrective action, and male coworkers David Scott and Michael Piemonte, who routinely left early without being required to text a manager and without being subjected to discipline.

76. Defendant's stated reasons for the adverse actions were false, pretextual, and not the real reasons for its conduct.

77. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the exhaustion of administrative prerequisites. See § 760.11, Fla. Stat.

78. As a direct and proximate result of Defendant's pregnancy discrimination, Plaintiff has suffered damages, including lost wages, lost

benefits, loss of earning capacity, loss of health insurance, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT V
### Violation of the Florida Civil Rights Act
### Retaliation
### § 760.10 et seq., Florida Statutes

79.     Plaintiff re-alleges paragraphs 1 through 44 as though fully set forth herein.

80.     At all times material, Defendant was an employer within the meaning of the FCRA.

81.     Plaintiff engaged in protected activity under the FCRA by filing an internal ethics complaint regarding discriminatory treatment, and by opposing employment practices made unlawful by the FCRA.

82.     Defendant knew of Plaintiff's protected activity.

83.     After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions, including the forced medical

leave, the denial of her accommodation request, and the failure to investigate her ethics complaint while leaving her without health insurance coverage during her high-risk pregnancy.

84.   The adverse actions taken against Plaintiff were causally connected to her protected activity, as evidenced by the temporal proximity between Plaintiff's complaints and the adverse actions, the pretextual nature of Defendant's stated justifications, and the broader pattern of retaliation against employees who filed ethics complaints.

85.   Defendant retaliated against Plaintiff because she opposed employment practices made unlawful by the FCRA.

86.   All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the exhaustion of administrative prerequisites. See § 760.11, Fla. Stat.

87.   As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 25th day of May 2026.

>/s/ Jason W. Imler, Esq
>Jason W. Imler
>Florida Bar No. 1004422
>Alberto "Tito" Gonzalez
>Florida Bar No. 1037033
>**Imler Law**
>23110 State Road 54, Unit 407
>Lutz, Florida 33549
>(P): 813-553-7709
>Jason@ImlerLaw.com
>Tito@ImlerLaw.com
>Ashley@ImlerLaw.com
>Tiffany@ImlerLaw.com